**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| JASMINE WARD, Individually and for Others Similarly Situated, | |
| Plaintiff, | |
| v. | **Case No. 2:25-cv-203** |
| SENTARA HOSPITALS, | Jury Trial Demanded |
| Defendant. | FLSA Collective Action Rule 23 Class Action |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Jasmine Ward (Ward) brings this class and collective action to recover unpaid wages and other damages from Sentara Hospitals (Sentara).

2.      Ward worked for Sentara in North Carolina and Virginia.

3.      Ward and the other Patient Care Employees (defined below) regularly work more than 40 hours in a week.

4.      Sentara pays Ward and the other Patient Care Employees by the hour.

5.      But Sentara does not pay them for all the hours they work.

6.      Instead, Sentara automatically deducts 30 minutes a day from these employees' hours for so called "meal periods" (Sentara's "auto-deduction policy")

7.      Ward and the other Patient Care Employees are thus not paid for this time.

8.      But Ward and the other Patient Care Employees do not actually receive *bona fide* meal breaks.

9.    Instead, Sentara requires Ward and the other Patient Care Employees to remain on duty and perform compensable work throughout their shifts, including during "meal periods," and subjects them to work interruptions during their "meal periods."

10.    Additionally, Sentara requires the Patient Care Employees to clock in and out for their shifts via its timekeeping system, but Sentara automatically rounds their clock in and clock out punches to the nearest quarter hour for its primary benefit (Sentara's "rounding policy").

11.    Sentara's auto-deduction policy and rounding policy violate the Virginia Overtime Wage Act (VOWA) and Fair Labor Standards Act (FLSA) by depriving Ward and the other Patient Care Employees of wages, including overtime wages for all overtime hours worked.

12.    Likewise, Sentara's auto-deduction policy and rounding policy violate the Virginia Wage Payment Act (VWPA) by depriving Ward and the other Patient Care Employees of earned wages (at their agreed hourly rates) for all hours worked.

## JURISDICTION & VENUE

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.    This Court has general personal jurisdiction over Sentara because Sentara is a Virginia corporation.

16.    Venue is proper because Sentara maintains its principal place of business in Norfolk, Virginia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

17.    Ward worked for Sentara as a respiratory therapist and administrative associate from approximately October 2021 until February 2025.

18.     Throughout her employment, Sentara classified Ward as non-exempt and paid her by the hour.

19.     Throughout her employment, Sentara subjected Ward to its auto-deduction policy.

20.     But throughout her employment, Ward did not actually receive *bona fide* meal breaks.

21.     Throughout her employment, Sentara likewise subjected her to its rounding policy.

22.     Ward brings this action on behalf of herself and other similarly situated hourly Sentara employees who were subject to Sentara's auto-deduction policy and/or rounding policy.

23.     The putative collective of similarly situated employees is defined as:

**All hourly Sentara employees who received a meal period deduction and/or had their punch times rounded at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

24.     The putative Virginia class of similarly situated employees is defined as:

**All hourly Sentara employees in Virginia who received a meal period deduction and/or had their punch times rounded at any time during the past 3 years through final resolution of this action ("Virginia Class Members").**

25.     The FLSA Collective Members and Virginia Class Members are collectively referred to as the "Patient Care Employees."

26.     Sentara is a Virginia corporation that maintains its headquarters in Norfolk, Virginia.

27.     Sentara may be served with process by serving its registered agent: **C T Corporation System, 4701 Cox Rd., Ste. 285, Glen Allen, Virginia 23060**.

## COVERAGE UNDER THE FLSA

28.     At all relevant times, Sentara was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

29.     At all relevant times, Sentara was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

3

30.     At all relevant times, Sentara was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

31.     At all relevant times, Sentara had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

32.     At all relevant times, Ward and the other Patient Care Employees were Sentara's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

33.     At all relevant times, Ward and the other Patient Care Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

34.     "Sentara is one of the largest health systems in the U.S. Mid-Atlantic and Southeast, and among the top 20 largest not-for-profit integrated health systems in the country, with 30,000 employees, 12 hospitals in Virginia and Northeastern North Carolina."[1]

35.     "Sentara operates more than 100 sites of care across Virginia and North Carolina."[2]

36.     To meet its business objectives, Sentara hires workers, including Ward and the other Patient Care Employees, to work in its healthcare facilities.

37.     Sentara maintains control, oversight, and direction of Ward and the Patient Care Employees, including, but not limited to, hiring, firing, disciplining, and other employment practices, regardless of the specific Sentara facility they are assigned.

---

[1] https://www.sentara.com/aboutus (Last visited March 18, 2025).
[2] https://www.sentara.com/hospitalslocations (last visited March 21, 2025).

38.    Sentara requires Ward and the Patient Care Employees to follow its uniform policies and procedures regardless of facility.

39.    Ward's and the Patient Care Employees' work must strictly adhere to the uniform quality standards put in place by Sentara.

40.    Sentara supervises and controls Ward's and the Patient Care Employees' patient care work and prohibits these employees from straying from its uniform procedures, plans, protocols, and specifications.

41.    Sentara controls Ward's and the other Patient Care Employees' rates and methods of pay, their schedules and assignments, as well as their patient care work.

42.    Sentara possesses the authority to hire, fire, and discipline Ward and the other Patient Care Employees.

43.    Indeed, to work in any of its facilities, patient care employees must be hired through Sentara.[3]

44.    Likewise, Sentara has a centralized human resources department for all its patient care employees, regardless of facility.[4]

45.    Sentara maintains employment records for Ward and the other Patient Care Employees.[5]

46.    Without the patient care work Ward and the Patient Care Employees perform, Sentara would not be able to complete its business objective of operating and managing hospitals and facilities.

47.    Thus, Ward's and the Patient Care Employees' work is integral to Sentara's business objectives.

---

[3] *See*, https://www.sentaracareers.com/ (last visited March 21, 2025).
[4] *See*, https://www.sentara.com/aboutus/careers/new-employee-information (last visited March 21, 2025).
[5] *See*, https://www.sentara.com/for-employees (last visited March 21, 2025).

48.     In sum, Sentara employs all the patient care employees at its various hospitals and facilities, including Ward and the Patient Care Employees.

49.     Sentara uniformly classifies these employees, including Ward and the Patient Care Employees, as non-exempt and pays them on an hourly basis.

50.     While exact job titles and precise job duties may differ, Sentara subjects them to the same or similar pay practices for similar work.

51.     For example, Ward worked for Sentara as a respiratory therapist and administrative associate in Sentara's Albemarle Medical Facility, Norfolk General Hospital, and Obici Hospital from approximately October 2021 until February 2025.

52.     As a respiratory therapist, Ward's job duties included monitoring patient breathing metrics, including blood oxygenation, intubating and extubating patients, operating breathing assistance and monitoring machines, and administering numerous breathing treatments, and as an administrative associate her duties included ordering supplies and monitoring the tracking system for nurses clearing rooms during codes, and ensuring the ICU operated smoothly.

53.     Throughout her employment, Sentara paid her by the hour.

54.     Ward typically worked approximately 12 hours a day "on the clock" for 3 to 5 days a week (36-60 hours a workweek).

55.     Throughout her employment, Sentara subjected Ward to its auto-deduction policy.

56.     But throughout her employment, Ward did not actually receive *bona fide* meal breaks.

57.     Ward and the Patient Care Employees perform their jobs under Sentara's supervision and use materials, equipment, and technology Sentara approves and supplies.

58.     Sentara requires Ward and the Patient Care Employees to follow and abide by common work, time, pay, "meal period," and overtime policies and procedures in the performance of their jobs.

59.    At the end of each pay period, Ward and the Patient Care Employees receive wages from Sentara that are determined by common systems and methods that Sentara selects and controls.

60.    Sentara requires Ward and the Patient Care Employees to record their "on the clock" hours worked using Sentara's designated timekeeping system.

61.    Like Ward, the other Patient Care Employees typically work approximately 12 hours a day for 3 to 5 days a week (36-60 hours a workweek).

62.    Sentara subjects Ward and the Patient Care Employees to a common policy and practice of automatically deducting time from these employees' recorded hours worked for "meal periods."

63.    Specifically, Sentara automatically deducts 30 minutes a workday from Ward's and the other Patient Care Employees' recorded hours and wages for so-called "meal periods."

64.    Sentara automatically deducts this time regardless of whether Ward and the Patient Care Employees actually receive full, uninterrupted, 30-minute meal breaks.

65.    Sentara simply assumes Ward and the Patient Care Employees receive *bona fide* meal breaks each shift they work.

66.    But Ward and the Patient Care Employees do not actually receive *bona fide* meal breaks.

67.    Instead, Sentara requires Ward and the Patient Care Employees to remain on duty and perform compensable work throughout their shifts for Sentara's predominant benefit, including during their "meal periods."

68.    And Sentara subjects Ward and the Patient Care Employees to work interruptions during their unpaid "meal periods."

69.    Thus, Ward and the Patient Care Employees are not free to engage in personal activities during their unpaid "meal periods."

70.     Rather, during their unpaid "meal periods," Ward and the Patient Care Employees are forced to substantially perform their regular patient care job duties and responsibilities.

71.     Thus, Ward and the Patient Care Employees routinely spend their unpaid "meal breaks" performing work for Sentara's—not these employees'—predominant benefit.

72.     This unpaid time is compensable under the FLSA because Sentara knew, or should have known, that (1) Ward and the Patient Care Employees were performing unpaid work during their "meal periods," (2) they were interrupted with work duties during any attempted "meal period," (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped the "meal period" due to work demands, (5) the "meal period" was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained on Sentara's premises or under Sentara's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular patient care duties for Sentara's predominant benefit.

73.     Sentara fails to exercise its duty as Ward's and the Patient Care Employees' employer to ensure these employees are not performing work that Sentara does not want performed during their unpaid "meal breaks."

74.     And Sentara knows Ward and the other Patient Care Employees routinely perform work "off the clock" during their unpaid meal breaks because Sentara expects and requires these employees to do so.

75.     Ward and the other Patient Care Employees have complained to Sentara's management and their supervisors about being forced to work during their unpaid "meal periods."

76.     Thus, Sentara required, requested, suffered, or permitted Ward and the Patient Care Employees to work during their unpaid "meal periods."

77.     Despite accepting the benefits, Sentara does not pay Ward and the Patient Care Employees for the compensable work they perform during their automatically deducted "meal periods."

78.     Thus, under Sentara's uniform auto-deduction policy, Ward and the Patient Care Employees are denied overtime pay for on duty "meal periods" during workweeks in which they work more than 40 hours, in violation of the FLSA and VOWA.

79.     In addition to deducting hours from these employees' wages for "meal periods," Sentara also uniformly subjects Ward and the Patient Care Employees to its rounding policy.

80.     Specifically, Sentara automatically rounds Ward's and the other Patient Care Employees' recorded clock in and clock out punches to the nearest quarter hour for Sentara's—not these employees'—primary benefit.

81.     In conjunction with Sentara's rounding policy, Sentara also prohibits Ward and the other Patient Care Employees from clocking in and out for their shifts more than 7.5 minutes before their shift start times and more than 7.5 minutes after their shift end times.

82.     And Sentara considers Ward and the other Patient Care Employees tardy and takes disciplinary action or threatens to do so if these employees clock in more than 7.5 minutes prior to their scheduled start time or clock out more than 7.5 minutes after their scheduled end time.

83.     Sentara further requires and expects Ward and the other Patient Care Employees to perform their normal job duties immediately upon clocking in, such as attending meetings, reviewing patient records, and/or communicating with and caring for patients.

84.     By enforcing these policies together, Sentara ensures its rounding policy benefits Sentara—and does not benefit Ward and the other Patient Care Employees.

85.     Thus, under Sentara's rounding policy, Ward and the other Patient Care Employees are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours, in violation of the FLSA and VOWA.

86.     When Ward and the Patient Care Employees work more than 40 hours in a workweek, Sentara does not pay them overtime wages for all overtime hours worked because Sentara fails to include time these employees worked "off the clock" during their unpaid "meal periods" and due to its rounding policy.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

87.     Ward brings her claims as a class and collective action on behalf of herself and the other Patient Care Employees.

88.     The Patient Care Employees were victimized by Sentara's auto-deduction policy and rounding policy.

89.     Other Patient Care Employees worked with Ward and indicated they were paid in the same manner, performed similar work, and were subject to Sentara's same or similar auto-deduction policy and rounding policy.

90.     Based on her experience with Sentara, Ward is aware Sentara's auto-deduction policy and rounding policy were imposed on other Patient Care Employees.

91.     The Patient Care Employees are similarly situated in the most relevant respects.

92.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

93.     Therefore, the specific job titles or precise job locations of the various Patient Care Employees do not prevent class or collective treatment.

94.     Rather, the putative collective is held together by Sentara's uniform auto-deduction policy and rounding policy, which systematically deprived Ward and the Patient Care Employees of overtime wages for hours worked in excess of 40 in a workweek.

95.     Sentara's failure to pay overtime wages as required by the FLSA and VOWA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Patient Care Employees.

96.     Sentara's records reflect the number of hours the Patient Care Employees recorded working each week.

97.     Sentara's records also show that it automatically deducted 30 minutes a day from the Patient Care Employees' recorded work time for "meal periods."

98.     Likewise, Sentara's records show the specific time the Patient Care Employees punched in and out for the shifts.

99.     And Sentara's records also show that it automatically rounded the Patient Care Employees recorded time punches to the nearest quarter hour.

100.    The back wages owed to Ward and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

101.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Sentara's records, and there is no detraction from the common nucleus of liability facts.

102.    Therefore, the issue of damages does not preclude class or collective treatment.

103.    Ward's experiences are therefore typical of the experiences of the Patient Care Employees.

104.    Ward has no interest contrary to, or in conflict with, the Patient Care Employees.

105. Like each Patient Care Employee, Ward has an interest in obtaining the unpaid wages owed under federal and Virginia law.

106. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

107. Absent this class and collective action, many Patient Care Employees likely will not obtain redress for their injuries, and Sentara will reap the unjust benefits of violating the FLSA and Virginia law.

108. Further, even if some of the Patient Care Employees could afford individual litigation against Sentara, it would be unduly burdensome to the judicial system.

109. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

110. The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

111. Among the common questions of law and fact are:

a. Whether Sentara engaged in a policy and practice of automatic 30-minute deductions for "meal periods" that were not *bona fide*, continuous, and uninterrupted;

b. Whether Sentara's auto-deduction policy deprived Ward and the other Patient Care Employees of wages for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c. Whether Sentara knew, or had reason to know, Ward and the Patient Care Employees were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal periods";

   d.  Whether Sentara's rounding policy deprived Ward and the other Patient Care Employees of wages for time worked;

   e.  Whether Sentara failed to pay Ward and the other Patient Care Employees overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock";

   f.  Whether Sentara's decision not to pay Ward and the Patient Care Employees overtime wages for all overtime hours worked was made in good faith; and

   g.  Whether Sentara's violations were willful.

112. As part of its regular business practices, Sentara intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Ward and the Patient Care Employees.

113. There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

114. This notice should be sent to the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

115. Those similarly situated employees are known to Sentara, are readily identifiable, and can be located through Sentara's business and personnel records.

### SENTARA'S VIOLATIONS WERE WILLFUL

116. Sentara knew it was subject to the FLSA's and VOWA's overtime provisions.

117. Sentara knew the FLSA and VOWA required it to pay employees, including the Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

118.    Sentara knew the Patient Care Employees were non-exempt employees entitled to overtime pay.

119.    Sentara knew the Patient Care Employees were paid by the hour.

120.    Sentara knew each Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Sentara required these employees to record their "on the clock" hours using its timekeeping system.

121.    Sentara knew the FLSA and VOWA required it to pay employees, including the Patient Care Employees, for all hours these employees performed compensable work.

122.    Sentara knew that, as the Patient Care Employees' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Sentara did not want performed.

123.    Sentara knew it failed to provide the Patient Care Employees with *bona fide*, uninterrupted meal breaks.

124.    Sentara knew the Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

125.    Sentara knew the Patient Care Employees regularly worked during their unpaid "meal periods."

126.    Sentara knew it required, requested, suffered, or permitted, the Patient Care Employees to work during their unpaid "meal periods."

127.    Sentara knew the Patient Care Employees regularly spent their unpaid "meal periods" substantially performing their regular job duties for Sentara's predominant benefit.

128.    Indeed, Patient Care Employees complained to Sentara's management, HR, and/or their supervisors about being forced to work during their unpaid "meal periods."

129.    Thus, Sentara knew, should have known, or recklessly disregarded the fact that the Patient Care Employees performed compensable work during their unpaid meal breaks.

130.    Nonetheless, Sentara automatically deducted 30 minutes a day from the Patient Care Employees' recorded work time for "meal periods."

131.    In other words, Sentara knew, should have known, or recklessly disregarded the fact that it did not pay the Patient Care Employees for all the hours they performed compensable work.

132.    Sentara knew it rounded the Patient Care Employees clock in and clock out punches to the nearest quarter hour.

133.    Sentara knew it required the Patient Care Employees to clock in and out within 7.5 minutes of their scheduled shift start and end times, under threat of disciplinary action for tardiness.

134.    Sentara knew this ensured the Patient Care Employees' hours would be rounded to the nearest quarter hour for Sentara's primary benefit and to the detriment of the Patient Care Employees.

135.    Sentara knew the VWPA requires employers, like Sentara, to pay employees, including Ward and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular paydays.

136.    Sentara's decision to automatically deduct 30 minutes a day from the Patient Care Employees' recorded work time for meal breaks was neither reasonable, nor was this decision made in good faith.

137.    Sentara's decision to round the Patient Care Employees' recorded work time to the nearest quarter hour for its benefit and their detriment under its rounding policy was neither reasonable, nor was this decision made in good faith.

138.    Sentara's failure to pay the Patient Care Employees overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

139.    Sentara knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Ward and the Patient Care Employees of overtime wages for all hours worked after 40 in a workweek and earned wages in violation of the FLSA and Virginia law.

140.    Sentara knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA and Virginia law.

141.    Indeed, Sentara has been sued previously by employees for failing to pay overtime wages in violation of the FLSA and analogous state wage and hour laws. *See, e.g., Meeker, et al. v. Medical Transport, LLC and Sentara Healthcare*, 2:14-cv-00426 (E.D. Va.).

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

142.    Ward brings her FLSA claim on behalf of herself and the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

143.    Sentara violated, and is violating, the FLSA by employing non-exempt employees (Ward and the Patient Care Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid "meal periods."

144.    Sentara's unlawful conduct harmed Ward and the Patient Care Employees by depriving them of the overtime wages they are owed.

145.    Accordingly, Ward and the Patient Care Employees are entitled to recover the difference between the wages actually paid and the overtime wages actually earned under the FLSA in

an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE VOWA
### (VIRGINIA CLASS)

146.    Ward brings her VOWA overtime claim on behalf of herself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

147.    Sentara's conduct violates the VOWA. *See* VA. CODE § 40.1-29.2.

148.    At all relevant times, Sentara was subject to the VOWA because Sentara was (and is) an "employer" within the meaning of the VOWA.

149.    At all relevant times, Sentara employed Ward and the other Virginia Class Members as its covered "employees" within the meaning of the VOWA.

150.    Ward and the other Virginia Class Members are non-exempt employees entitled to overtime wages under the VOWA.

151.    The VOWA requires employers, like Sentara, to pay non-exempt employees, including Ward and the other Virginia Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. VA. CODE § 40.1-29.2.

152.    Sentara violated, and is violating, the VOWA by failing to pay Ward and the other Virginia Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

153.    Sentara's unlawful conduct harmed Ward and the other Virginia Class Members by depriving them of the overtime wages they are owed.

154.    Accordingly, Sentara owes Ward and the other Virginia Class Members the overtime wages at 1.5 times their regular rates for all hours worked over 40 in a workweek, plus an additional amount as liquidated damages. VA. CODE §§ 40.1-29(J) and 40.1-29.2.

155.    Because Sentara "knowingly" failed to pay Ward and the other Virginia Class Members the proper premium overtime wages for all their overtime hours worked, Sentara owes these employees treble damages in an amount equal to three times their unpaid overtime wages for the period July 1, 2021 to June 30, 2022 during which the then in-effect iteration of VOWA allowed for same.. VA. CODE § 40.1-29(J).

156.    Finally, Ward and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

<u>**COUNT III**</u>

**FAILURE TO PAY ALL WAGES EARNED UNDER THE VWPA**
**(VIRGINIA CLASS)**

157.    Ward brings her VWPA claim on behalf of herself and the other Virginia Class Members pursuant to FED. R. CIV. P. 23.

158.    Sentara's conduct violates the VWPA (VA. CODE § 40.1-29).

159.    At all relevant times, Sentara was subject to the VWPA because Sentara was (and is) an "employer" within the meaning of the VWPA.

160.    At all relevant times, Sentara employed Ward and the other Virginia Class Members as its covered "employees" within the meaning of the VWPA.

161.    The VWPA requires employers, like Sentara, to pay employees, including Ward and the other Virginia Class Members, for all the hours of work they perform at the rate(s) agreed to by the parties on their regular, established paydays. VA. CODE § 40.1-29.

162.    During the course of their employment, Sentara agreed to pay Ward and each Virginia Class Member an hourly rate for all the hours of work they performed.

163.    Ward and each Virginia Class Member accepted Sentara's offer.

164.    But during the course of their employment, Sentara failed to pay Ward and the other Virginia Class Members for all the time they worked at the rates Sentara agreed to pay them because

Sentara failed to include the time they worked "off the clock" before and after their shifts due to Sentara's rounding policy and during their "meal periods."

165.    Thus, Sentara violated, and is violating, the VWPA by failing to pay Ward and the other Virginia Class Members all their earned wages (at the rates Sentara agreed to pay them) for all the hours of work they performed for Sentara's predominant benefit.

166.    Sentara's unlawful conduct harmed Ward and the other Virginia Class Members by depriving them of the earned wages they are owed.

167.    Accordingly, Sentara owes Ward and the other Virginia Class Members their unpaid earned wages (at their agreed hourly rates), plus an equal amount as liquidated damages. VA. CODE § 40.1-29(J).

168.    Because Sentara "knowingly" failed to pay Ward and the other Virginia Class Members their earned wages, Sentara owes these employees treble damages in an amount equal to three times their unpaid wages for the period July 1, 2021 to June 30, 2022, during which the in effect iteration of VOWA allowed for recovery of same. VA. CODE § 40.1-29(J).

169.    Finally, Ward and the other Virginia Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. VA. CODE § 40.1-29(J).

## JURY DEMAND

170.    Ward demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Ward, individually and on behalf of the Patient Care Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Patient Care Employees with instructions to permit them to assert timely FLSA claims in

this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Ward and her counsel to represent the interests of the Patient Care Employees;

d.      An Order finding Sentara liable to Ward and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding Sentara liable to Ward and the other Virginia Class Members for all their unpaid overtime wages owed under the VOWA, plus liquidated damages, and treble damages;

f.      An Order finding Sentara liable to Ward and the other Virginia Class Members for all their unpaid earned wages owed under the VWPA, plus liquidated damages, and treble damages;

g.      Judgment awarding Ward and the other Patient Care Employees all unpaid earned wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA, VOWA, and VWPA;

h.      An Order awarding attorney's fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: April 8, 2025.                    Respectfully submitted,

                                         **BUTLER CURWOOD, PLC**

                                         By: _/s/ Zev H. Antell_

Harris D. Butler, III (VSB No. 26483)
Craig J. Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Samantha R. Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Phone: (804) 648-4848
Fax:     (804) 237-0413
         harris@butlercurwood.com
         craig@butlercurwood.com
         zev@butlercurwood.com
         samantha@butlercurwood.com


Michael A. Josephson*
Andrew W. Dunlap*
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
         mjosephson@mybackwages.com
         adunlap@mybackwages.com


Richard J. (Rex) Burch*
BRUCKNER BURCH, PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
         rburch@brucknerburch.com


*Pro hac vice applications forthcoming


ATTORNEYS FOR WARD &
THE PATIENT CARE EMPLOYEES